UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | Case 1:16-cr-00064 |
| v. | ) | Alexandria, Virginia October 24, 2016 8:47 a.m. |
| MAHMOUD AMIN MOHAMED ELHASSAN, Defendant. | ) | Pages 1 - 28 |

TRANSCRIPT OF CHANGE OF PLEA

BEFORE THE HONORABLE ANTHONY J. TRENGA

UNITED STATES DISTRICT COURT JUDGE

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

APPEARANCES:

FOR THE PLAINTIFF:

DENNIS M. FITZPATRICK, ESQUIRE
OFFICE OF THE UNITED STATES ATTORNEY
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

FOR THE DEFENDANT:

STUART A. SEARS, ESQUIRE
SCHERTLER & ONORATO, LLP
575 7th Street, N.W.
Suite 300 South
Washington, D.C. 20004

THOMAS A. DURKIN, ESQUIRE
DURKIN & ROBERTS
2446 North Clark Street
Chicago, Illinois 60614
(312) 981-0123

THE DEFENDANT, MAHMOUD AMIN MOHAMED ELHASSAN, IN PERSON

THE CLERK: Criminal Case 1:16-cr-64, *United States of America v. Mahmoud Amin Mohamed Elhassan.*

Will counsel please identify themselves for the record.

MR. FITZPATRICK: Thank you.

Good morning, Your Honor. Dennis Fitzpatrick on behalf of the United States.

THE COURT: Good morning.

MR. DURKIN: Good morning, Judge. Tom Durkin and Stuart Sears on behalf of the defendant, who is present and in custody.

THE COURT: Good morning.

I understand we're here for a change in plea as to Counts 2 and 3. Is that correct?

MR. DURKIN: That's correct, Judge.

THE COURT: With no plea agreement and no statement of facts?

MR. DURKIN: That's right. We filed a written motion, Document 39, on October 21. There's one maybe housekeeping matter. When I filed the motion, since he was in custody, I just had his electronic signature, Judge. I went to the jail over the weekend. I have his signed affidavit. And I just noticed that I had it for a notary, but I'm not a notary. I'm wondering if we can swear him or --

THE COURT: I'll have him swear to the affidavit.

MR. DURKIN: I'll tender this to your clerk.

THE COURT: All right. Mr. Fitzpatrick, I understand the government intends to go forward on Count 1. Is that correct?

MR. FITZPATRICK: That's the government's intention, Your Honor, yes.

THE COURT: All right. Mr. Elhassan, come to the podium and be sworn, please.

(The defendant affirms.)

THE COURT: Would you state your full name, please.

THE DEFENDANT: My name is Mahmoud Amin Mohamed Elhassan.

THE COURT: All right. Mr. Elhassan, you may lower your right hand.

The purpose of this hearing is to give you the opportunity to enter a plea of guilty to the charge in Count 2 of the indictment charging attempt to provide material support to a foreign terrorist organization and also Count 3 which charges you with providing false statements. If you enter such a plea, it will be the responsibility of this Court to ensure that your plea is entered voluntarily, that is that no

one is forcing you to enter those guilty pleas, and also that you enter those pleas knowingly, that is that you understand the consequences of pleading guilty.

In order for the Court to make those determinations, I'm going to ask you a series of questions. For that purpose, you've been placed under oath. Having been placed under oath, you have the obligation to answer all of the Court's questions truthfully. If any of your answers prove to be untrue, you may be subjecting yourself to additional criminal penalties.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: What is your age?

THE DEFENDANT: Twenty-six.

THE COURT: What is your highest level of formal education?

THE DEFENDANT: I was a student at Northern Virginia Community College.

THE COURT: You're a citizen of the United States?

THE DEFENDANT: No. I'm a green card holder.

THE COURT: Of what country are you a citizen?

THE DEFENDANT: Sudan.

THE COURT: And you're a permanent resident here?

THE DEFENDANT: Yes.

THE COURT: You've been represented by a lawyer in connection with this case? Are you represented by a lawyer?

THE DEFENDANT: Yes.

THE COURT: Have you met with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Have you discussed with your lawyer the charge against you and what the government must prove in order to convict you of that charge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you discussed with your lawyer the consequences of pleading guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you discussed with your lawyer potential defenses and the merits of those potential defenses?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you provided to your lawyer all the facts and information you have pertaining to these charges?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you understood everything

your lawyer has told you?

THE DEFENDANT: Yes.

THE COURT: Have you had any difficulty understanding anything your lawyer has told you, anything about these charges against you, or anything about the nature of these proceedings, including why you're in court here today?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you been satisfied with the services of your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you think you've had enough time to meet with your lawyer and discuss whether or not you should be entering guilty pleas here today?

THE DEFENDANT: Yes.

THE COURT: Do you think you've had enough time?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by pleading guilty to these two charges, the government nevertheless intends to go forward with the charge in Count 1 of the indictment which charges conspiracy to provide material support to a foreign terrorist organization? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: It's your desire to enter guilty pleas to these two counts even though you face trial on the remaining Count 1? Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Have you been under the influence of any drugs or medication or any other substance that's affected your ability to understand anything about these charges or anything about these proceedings?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you currently under the care of any mental health professional?

THE DEFENDANT: No, Your Honor.

THE COURT: Counsel, based on everything you know, is Mr. Elhassan competent to enter a guilty plea here today?

MR. DURKIN: Yes, Judge.

THE COURT: I understand that you have not entered into any plea agreements with the United States. Is that correct?

THE DEFENDANT: That's correct.

THE COURT: Do you think you have any agreements or promises or understandings from the United States with respect to the entry of your guilty pleas?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you discussed with your lawyer the constitutional rights you have as someone charged with a crime and that you would give up those rights as to Counts 2 and 3 based on your guilty pleas?

THE DEFENDANT: Yes.

THE COURT: You have the absolute right to proceed to a public and speedy trial on your pleas of not guilty before a jury of 12 United States citizens. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In order to convict you of these charges, that jury must unanimously find you guilty of these charges. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: At that trial, you would be entitled to be represented by a lawyer. If you could not afford one, one would be appointed for you. Do you understand that?

THE DEFENDANT: Yes, sir, I understand.

THE COURT: Also, at that trial, you would be presumed innocent of these charges, and the government would have the obligation of proving each and every element of these charges beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Also, at that trial, you and your lawyer would have the right to confront any witnesses that the government presented, to cross-examine those witnesses, and to challenge the admissibility of any evidence that the government offered. Do you understand?

THE DEFENDANT: Yes, I understand.

THE COURT: Also, at that trial, you would be entitled to present your own defense, and that would include the right to require any person with relevant information to be brought into court and to bring with him or her any documents relevant to these charges. Do you understand?

THE DEFENDANT: Yes.

THE COURT: Also, as part of your defense, you could testify yourself at that trial. You could take the stand, be placed under oath, and testify subject to cross-examination, but you would have absolutely no obligation to testify. You could remain silent in the face of these charges, and if you decided not to testify, the government could not force you to testify or to incriminate yourself in any way. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Also, if you decided not to testify, no inference of guilt could be inferred from the fact that you decided not to testify. You would continue to be presumed innocent of this charge, and the government would continue to have the obligation of proving these charges beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Also, if after you went to trial, if you were convicted, you would have the right to appeal that conviction to a higher court together with your sentence. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: By pleading guilty to these charges, there will be no trial with respect to these two charges, and you will be convicted of these two charges just as if you had gone to trial and were convicted by a jury. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Also, do you understand that any statements you make in connection with these two charges and your admission of any facts as set forth in your affidavit would be admissible against you with respect to the remaining count that's charged against you? Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Having heard all of these rights that you have and that you would give up these rights by pleading guilty, is it still your decision here today to enter a guilty plea?

THE DEFENDANT: Yes.

THE COURT: In addition to the waiver of the rights that I've mentioned, there will be other collateral consequences, including a forfeiture of any right you might have to vote, hold public office, serve on a jury, and possess a firearm. Do you understand that?

THE DEFENDANT: Yes, I do understand.

THE COURT: Do you also understand that your guilty plea will be binding on you for the purposes of any immigration proceedings? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that your guilty pleas here will have immigration consequences? Do you understand?

THE DEFENDANT: Yes.

THE COURT: Is it your decision here today to enter guilty pleas to these charges regardless of the immigration consequences?

THE DEFENDANT: Yes, sir.

THE COURT: Have you discussed with your counsel how the Court would go about deciding what sentence to impose based on the guilty pleas that you would enter here today? Have you discussed the sentence process here?

THE DEFENDANT: Yes.

THE COURT: Have you discussed what we call the guideline sentences?

THE DEFENDANT: Yes.

THE COURT: As that name suggests, those are only guidelines. The Court is not obligated to enter a guideline sentence. It may enter a guideline sentence, or it may enter a sentence greater than the guidelines or less than the guidelines obligated only to enter a punishment within the maximum punishments for these offenses. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: With respect to Count 2 of the indictment charging attempt to provide material support, do you understand that the maximum punishment you could receive is up to 20 years, a fine of up to $250,000, a special assessment of $100, and a period of supervised release of up to life? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that with respect to Count 3 charging false statements, the maximum punishment you could receive is 8 years, a fine of up to $250,000, a special assessment of $100, and a period of supervised release of up to 3 years? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Supervised release, as mentioned in those sentences that I just mentioned, is in addition to any term of imprisonment that might be imposed. It would begin after your release from any term of imprisonment that's imposed, and there would be certain conditions that you would have to comply with. If you failed to comply with those conditions, you could be imprisoned for all or a portion of those periods of supervised release. Do you understand?

THE DEFENDANT: Yes, I understand.

THE COURT: Also, we abolished parole within the federal system so that you will, in fact, serve the full length of any term of imprisonment that's imposed subject to only the possibility of a reduction up to 50 percent of your sentence based on the good behavior. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Also, with respect to the

sentencing guidelines, the Court is not going to be able to finally decide what the sentencing guideline is until after it receives a presentence report and you and your lawyer and the government have had an opportunity to review that report and object to any information in it. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Also, the Court is not going to be bound by any recommendations with respect to your sentence. Only the Court will decide what sentence to impose. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So that if you receive a sentence that is different than what the government recommends or what your lawyer recommends or if you receive a sentence that is different than someone told you you're likely to receive or that you're expecting or if you receive a sentence that you just think is unfair in some way, you nevertheless are going to be bound by your guilty pleas, and you will not be permitted to withdraw your guilty pleas after you hear what the sentence is. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In a moment, I'm going to ask the government to tell the Court what evidence it would

present with respect to these charges. I want you to listen carefully to what the government tells the Court because after the government is done, I'm going to ask you whether you disagree with what the government has told the Court about your conduct.

Mr. Fitzpatrick.

MR. FITZPATRICK: Thank you, Your Honor.

Your Honor, the Islamic State, which is what they call themselves -- the government refers to them as ISIL or ISIS -- is a specifically designated foreign terrorist organization.

The defendant's role in this case essentially began in 2015. The government knows that he began visiting websites that were jihadist in nature, violent, expressing direct antagonism towards the United States.

Pursuant to his Internet activities, he met someone who had a rather high profile and who portrayed himself as having connections with people within the terrorist organization who could facilitate travel to Syria and Iraq in order to join the terrorist organization. The defendant contacted this person and sort of developed a friendship with this person.

In or about August 2015, the defendant had already been friends, acquaintances with Joseph

Farrokh. Mr. Farrokh was married in August 2015. He invited the defendant to his wedding reception. The defendant asked if he could bring along a friend, the person who was familiar with recruiting efforts. Mr. Farrokh said yes. The defendant and Mr. Farrokh had previously had discussions about joining the ISIL cause and going over to help ISIL.

The defendant and the third individual went to Mr. Farrokh's wedding. The defendant introduced Mr. Farrokh to this individual, and they had preliminary discussions about joining ISIL and facilitating Mr. Farrokh's travel overseas to join ISIL.

Between August and January -- August 2015 and January 2016, the defendant and Mr. Farrokh had numerous conversations about the upcoming travel and the preparations and what Mr. Farrokh would do there. A number of the conversations were violent in nature expressing a desire to go over there and chop heads, fight against the U.S. military, etc.

The defendant throughout this four- or five-month period counseled Mr. Farrokh, and they had general discussions about the travel. The plan that they formulated would be that Mr. Farrokh would go to Syria first. And once he successfully made it there,

Mr. Elhassan would soon follow and join him. Mr. Farrokh paid Mr. Elhassan some money before he left to help Mr. Elhassan go through with his future travel.

On January 1, 2016, the defendant had a conversation with a third individual in which he expressed his understanding of Mr. Farrokh's desire to travel. He understood what Mr. Farrokh's plan was to include that Mr. Farrokh was going to tell his family that he intended to go to Saudi Arabia to study religion. That was false, and Mr. Elhassan knew that that was part of the plan, to sort of create a false narrative of where Mr. Farrokh was going to conceal his future travel plans.

On or about January 15, 2016, at approximately 8:00 in the morning, the defendant picked up Mr. Farrokh from his residence in Woodbridge. Mr. Elhassan was driving his taxicab. Mr. Farrokh carried two bags with him. He got in Mr. Elhassan's car, and they proceeded south on Route 95.

They stopped shortly after they began their trip so Mr. Farrokh could enter a restroom where he shaved his beard. He did this in order to appear less conspicuous when he began his travel.

They arrived in Richmond significantly early for Mr. Farrokh's flight, so they went to a nearby

shopping center about a mile from the Richmond International Airport. They loitered there for a couple of hours visiting shops. All of this, Your Honor, was under the surveillance of the FBI.

At the end of their time at the shopping mall, Mr. Elhassan called another cab to come pick up Mr. Farrokh so as to conceal Mr. Elhassan's involvement in going to the airport.

The other cab arrived, took Mr. Farrokh to the airport. Once Mr. Farrokh passed through the security checkpoints and was heading towards his gate, he was arrested.

The defendant proceeded north on 95 ultimately arriving at the Potomac Mills Shopping Mall in Woodbridge. There he was confronted by FBI agents. He voluntarily agreed to speak to them in the food court area. The defendant was told several times that lying to the FBI was a federal offense. He was given notice that if he should lie, he would be subject to criminal penalties. During an approximately two-hour, if not longer, interview, the defendant made numerous false statements to the FBI. The defendant stated that Mr. Farrokh was traveling out of Dulles Airport, that his intention was to go to California to attend a family funeral. He said that the last time he had seen

Mr. Farrokh was in Woodbridge, Virginia, thereby denying that he drove him to Richmond.

In substantial part, Your Honor, that would have been the government's evidence in this case, among other evidence.

THE COURT: All right. Thank you.

Mr. Elhassan, would you come to the podium, please.

MR. DURKIN: Judge, could I speak to him?

THE COURT: Yes.

(Defense counsel and the defendant confer.)

MR. DURKIN: Judge, if I could, we don't dispute that the government's witnesses would testify in the manner that he just described. The only factual dispute we have had is over whether he was going to go overseas himself. It's a dispute that we don't think is material to the pleas he's entering.

Mr. Sears and I believe this is truly an aiding and abetting case. That's why he's pleading to Count 2, because that does charge Section 280, and we don't dispute Count 3.

The rest of that -- obviously, I was only taking notes. As long as there's an understanding, that would be the only factual dispute we have. In many ways, it's a dispute that I would prefer not to

have to get into today, and I don't think it's material to --

THE COURT: Other than any facts that were recited pertaining to whether or not he would go overseas, I take it Mr. Elhassan is prepared to not dispute the balance of the recitation?

MR. DURKIN: I believe that's the case.

(Defense counsel and the defendant confer.)

MR. DURKIN: That's correct, Your Honor.

THE COURT: All right. Mr. Elhassan, would you come forward, please.

I understand from your counsel that you dispute any claim or any recitation that you had agreed to go overseas yourself or that you indicated you would do so. Other than any of the facts that Mr. Fitzpatrick mentioned relating to that issue, do you dispute anything else that the government has told the Court?

THE DEFENDANT: No, Your Honor.

THE COURT: I understand that you have also signed an affidavit under oath. Is that correct?

THE DEFENDANT: Yes.

THE COURT: Do you have a copy of that in front of you?

THE DEFENDANT: Yes.

THE COURT: Does your signature appear on that document?

MR. DURKIN: It does, Judge.

THE DEFENDANT: Yes.

THE COURT: You signed that document?

THE DEFENDANT: Yes.

THE COURT: Did you read that document?

THE DEFENDANT: Yes, I did.

THE COURT: Did you understand everything in that document?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you have all of your questions answered about that document?

THE DEFENDANT: Yes, sir.

THE COURT: Did anyone threaten you or try to influence you in any way in to signing that affidavit against your will?

THE DEFENDANT: No, Your Honor.

THE COURT: Are the statements in this affidavit true and correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I understand from your affidavit that you are also admitting to the allegations set forth in Counts 2 and 3 of the indictment. Is that correct?

THE DEFENDANT: That is correct.

THE COURT: Have you reviewed the indictment, those counts?

THE DEFENDANT: Yes.

THE COURT: You understood the statements in those counts; is that correct?

THE DEFENDANT: Yes.

THE COURT: In Count 2 of the indictment, it states that you know that ISIL was a designated foreign terrorist organization, that ISIL engages and has engaged in terrorist activity, and that ISIL engages and has engaged in terrorism.

Do you agree that that is a correct statement as to your knowledge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, Count 2 alleges that you aided and abetted by, among other things, introducing Mr. Farrokh in or about August 2015 to an individual that you believed could facilitate Farrokh's travels to the Islamic State so that this individual could, in fact, facilitate Farrokh's travel to an Islamic State.

Is that, in fact, a true statement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It also alleges that you drove Farrokh from Farrokh's home to Richmond, Virginia, on

January 15, 2016, so that Farrokh could embark on his travel to the Islamic State. Is that, in fact, a true statement?

THE DEFENDANT: That is a true statement.

THE COURT: It also alleges that you made false statements to the FBI about Farrokh's travel on January 15, 2016, in order to hinder the government's investigation of Farrokh's travel. Is that a true statement?

THE DEFENDANT: That is a true statement.

THE COURT: In Count 3, it is alleged that you made false, fictitious, and fraudulent statements to the federal government, specifically that Mr. Farrokh had flown out of Dulles Airport earlier that day on a flight to California to attend a funeral. Is that a true statement?

THE DEFENDANT: It is a true statement.

THE COURT: You also falsely stated that Farrokh had said he would be back in about two weeks. Is that a true statement?

THE DEFENDANT: That's true.

THE COURT: You also falsely stated that you, nor Farrokh, supported the Islamic State. Is that a true statement?

THE DEFENDANT: That is a true statement.

THE COURT: You also stated, as alleged, that neither you nor Farrokh ever tried to find someone to help him get to the Islamic State. Is that, in fact, a true statement?

THE DEFENDANT: Yes.

THE COURT: And is it the case that you are pleading guilty to Counts 2 and 3 of the indictment because you are, in fact, guilty of what you've been charged with in those counts?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counsel, based on everything you know, is there an adequate factual basis for the pleas as to Counts 2 and 3?

MR. DURKIN: Yes, Judge.

THE COURT: Before pleading further to Counts 2 and 3 of the indictment, would you like to speak with your lawyer any further?

THE DEFENDANT: No, Your Honor.

THE COURT: With respect to Count 2 of the indictment charging attempting to provide material support to a foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B and 2, how do you plead? Guilty or not guilty?

THE DEFENDANT: I plead guilty.

THE COURT: With respect to Count 3 of the

indictment charging making false statements, in violation of Title 18, United States Code, Section 1001, how do you plead? Guilty or not guilty?

THE DEFENDANT: I plead guilty.

THE COURT: Let the record reflect that based on the responses of this defendant to the Court's questions and the representations of counsel for the government and for the defendant, it is the finding of this Court in the case of *United States v. Mahmoud Amin Mohamed Elhassan* that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the pleas, and that the pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of those offenses. The pleas are, therefore, accepted, and the defendant is now adjudged guilty of Counts 2 and 3 of the indictment.

I'm not going to set this matter down for sentencing until after disposition on Count 1.

Between now and when we proceed to trial on --

What's the trial date?

MR. FITZPATRICK: January 23, Your Honor.

THE COURT: -- January 23, you will be

remanded to the custody of the United States Marshals.

Is there anything further?

MR. FITZPATRICK: No, Your Honor.

THE COURT: Anything further, Counsel?

MR. DURKIN: Judge, I'm hoping that Count 1 can get resolved. That's our intent.

THE COURT: Well, I would encourage the government and the defense to continue the discussion.

MR. DURKIN: There's one minor issue that I won't belabor right now. The government has actually been of some assistance, but it may reflect if we have to try Count 1, which I hope we don't. We have a license from OFAC, Office of Foreign Assets Control. There's been a problem with my bank over that. I won't belabor it now. The government is well aware of that. In fact, they've been of some assistance, but there is a potential issue.

THE COURT: Well, to the extent you need the Court's assistance or need the Court to consider something, obviously, file a motion. The Court will take it up expeditiously.

MR. DURKIN: Thank you.

THE COURT: All right. Thank you.

Counsel is excused.

The defendant is remanded.

The Court will take a brief recess before the *Fluor* matter.

----------------------------------
Time: 9:16 a.m.

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

/s/
Rhonda F. Montgomery, CCR, RPR